AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

SEP 3 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  **19MJ4242**
)
Black LG LM-X210CM, Serial No. 906CY092611, )
Seized as FP&F No. 2019250600120801 )
(further described in Attachment A-1) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A1

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960 and 963 | Importation of controlled substances and conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

HSI Special Agent Jeffrey Rabine
Printed name and title

Sworn to before me and signed in my presence.

Date: 9/30/19

_____
Judge's signature

City and state: San Diego, CA      Hon. Michael S. Berg, U.S. Magistrate Judge
Printed name and title

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black LG LM-X210CM
>Serial No. 906CY092611
>Seized as FP&F No. 2019250600120801
>("**Target Device 1**")

**Target Device 1** is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the **Target Device** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2019 through September 27, 2019:

a. tending to indicate efforts to import fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Jeffrey Rabine, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of applications for warrants to search the following electronic devices, as further described in Attachments A-1 and A-2 (collectively referred to herein as the "**Target Devices**"):

>Black LG LM-X210CM
>Serial No. 906CY092611
>Seized as FP&F No. 2019250600120801
>("**Target Device 1**" as further described in Attachment A-1)
>Silver MOBO MB-600
>Serial No. 123456789ABCDEF
>Seized as FP&F No. 2019250600120801
>("**Target Device 2**" as further described in Attachment A-2)

and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Martin ANSALDO ("ANSALDO") for importing approximately 4.90 kilograms (10.80 pounds) of fentanyl and 2.48 kilograms (5.46 pounds) of heroin from Mexico into the United States. *See U.S. v. Ansaldo* Case No. 19-mj-4184 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Devices** were seized from ANSALDO at the time of his arrest, have been securely stored since that time, and are currently in the evidence vault located at 880 Front Street, Suite 3200, San Diego, CA 92101.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining search warrants for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

# BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since July 2017. I am currently assigned to the Contraband Smuggling Group 4 at San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates

engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to import fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of fentanyl and/or heroin, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

9. On September 26, 2019, at approximately 3:49 a.m., ANSALDO attempted to enter the United States at the Otay Mesa, California, Port of Entry. ANSALDO was the driver of a 2003 brown Honda Odyssey bearing California plate 5CDN598. During primary inspection, ANSALDO presented a Nevada drivers license bearing his name and stated he was going to San Diego. A Customs Border Protection Officer (CBPO) received

3

two negative customs declaration from ANSALDO. While ANSALDO was at the primary lane, a canine trained in human and narcotics detection alerted to a trained odor emanating from inside the vehicle. ANSALDO was subsequently arrested and the **Target Devices** were seized from ANSALDO's vehicle.

    10.    An inspection by a CBPO resulted in the discovery of six (6) packages concealed within the dashboard of the vehicle. Four (4) packages contained a white substance. A sample of a random package field tested positive for fentanyl. The total weight was approximately 4.90 kilograms (10.80 pounds). Two (2) packages contained a brown substance. A sample of a random package field tested positive for heroin. The total weight was approximately 2.48 kilograms (5.46 pounds.).

    11.    Later, another HSI agent and I read ANSALDO his *Miranda* rights, and he agreed to speak to agents without an attorney present. ANSALDO admitted knowledge of the drugs in his vehicle. ANSALDO told agents he was approached this past Monday (which would have been September 23, 2019) by a man named Luis Quintero. At the time, ANSALDO was exiting a small shop by his residence in Colonia El Presidente in Tijuana, MX. Quintero told ANSALDO he had to make one trip with drugs inside his vehicle and that he knew where ANSALDO's girlfriend and family lived. ANSALDO said he saw what he believed was a weapon in Quintero's waistband and felt in fear for his family's lives. Quintero told ANSALDO that he was not going to pay him and that ANSALDO would see how easy it is to smuggle and that ANSALDO would want to do it more to make a lot of money. ANSALDO said he did not ask Quintero for money. ANSALDO met with Quintero yesterday (September 25, 2019) outside of his residence and gave Quintero the keys to the Honda Odyssey. Quintero told ANSALDO to pick up the vehicle this morning at 3:00 am at Quintero's house. At 3:00 am today, the two met. Quintero gave ANSALDO the keys and a cell phone. ANSALDO was to cross the border and then receive a call (on the cell phone given to him) from Quintero with directions of where to take his vehicle.

    12.    In light of the above facts, ANSALDO's statements, and my own experience and training, there is probable cause to believe that ANSALDO was using the **Target**

**Devices** to communicate with others to further the importation of illicit narcotics into the United States.

13. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as ANSALDO, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on August 1, 2019 through September 27, 2019, which was the day following Defendant's arrest.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all

of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

17. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

18. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of ANSALDO's violations of Title 21, United States Code, Sections 952, 960 and 963.

19. Because the **Target Devices** were seized at the time of ANSALDO's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from August 1, 2019 through September 27, 2019.

20. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Jeffrey Rabine
Homeland Security Investigations

Subscribed and sworn to before me this __30__ day of ~~October~~ SEPTEMBER, 2019.
Jon

_____
Hon. Michael S. Berg
United States Magistrate Judge

7